MARTIN V. B. SMITH, Respondent, *v.* ELIZABETH J. CLARENDON *et al.*, Appellants.

*Supreme Court, First Department, General Term, July 9, 1889.*

1. *Assignment. Preference.*—An individual debt cannot be lawfully preferred in a firm assignment.
2. *Same. Fraud.*—The fact of withdrawing money, in contemplation of making an assignment, in order to prevent it from coming to the assignee, makes the assignment fraudulent and void.
3. *Same.*—Where the assignors, a short time before the assignment was made, sent large quantities of goods to be sold at auction, no inference of fraud can be drawn from such fact, in case the prices realized on the sales are for the most part only sufficient to cover the advances previously obtained thereon.
4. *Appeal. Evidence.*—A question, which elicits nothing by way of answer that can possibly harm the appellants, furnishes no ground of error.

Appeal from a judgment in favor of plaintiff.

*Wm. H. Arnoux*, for appellants.

*A. Blumenstiel*, for respondents.

BARTLETT, J.—The court below set aside a general assignment made by the defendants Elizabeth J. Clarendon and Joseph Talbot, constituting the firm of Clarendon and Talbot, to the defendant, James P. Clarendon, on December 1st, 1885, on the ground that such assignment was fraudulent and void. The finding that it was made with intent to hinder, delay and defraud the creditors of the assignors was based upon four conclusions of fact:

*First.* That the assignment preferred Julia Clarendon for a fictitious claim of $100.

*Second.* That in contemplation of making the assignment, the defendant Joseph Talbot withdrew from the firm assets the sum of $433.21, which he and his copartner used for their individual and personal benefit and not in payment of any firm liabilities.

*Third.* That the assignment contained a preference to the defendant Joseph Talbot as assignee of Thomas Gilbert, which included interest from February 23d, 1882, although the principal sum upon which said interest was to be computed, had not been loaned until December 1882; and,

*Fourth.* That being insolvent, and in order to get rid of their assets, the assignors, contrary to the usual course of their business, sold large quantities of goods at auction.

The defendant Talbot swore that the debt for which Miss Julia Clarendon was preferred in the assignment was due to her for services rendered to him personally as housekeeper probably two years before. The total amount of her claim originally was $185, represented by two notes of the firm; one was for eighty-five dollars and the other for $100. The eighty-five dollar note was paid and the $100 note was left outstanding at the time of the assignment. The learned counsel for the appellants argue that Mr. Talbot had received money from time to time from his father's estate which, instead of using to pay his debt to Miss Clarendon, he put into the firm; that thereupon she took the firm's note, and the transaction was in effect a loan of

money by her to the assignors. As to this point it need only be said that there is nothing in the evidence to show any connection between the receipt of money by Mr. Talbot from his father's estate and the giving of the notes to Miss Clarendon, or that the firm ever received any consideration whatever for the $100 represented by this preference. The debt was an individual debt, which could not lawfully be preferred in the firm assignment.

The proof seems clear that a short time prior to the assignment the defendant Talbot drew $433.21 at one time for the payment of his personal expenses; and the circumstances under which this money was taken warrants the conclusion that it was withdrawn in contemplation of the assignment. On this point, however, the appellants refer to their fifth request to find, which is in these words: " That the said assignors had no intention or purpose of making an assignment until within a week before the actual delivery of said assignment, and not until certain other parties failed to pay their obligations to them, which caused their failure."

This proposition was found by the trial judge. He had prevously found that the sum of $433.21 was withdrawn from the firm assets by the defendant Talbot on November 21, 1885, which was more than a week before the assignment. It is urged, therefore, that the assignors could not have contemplated the making of the assignment at the time this money was withdrawn, and such would certainly be the import of the finding based upon the appellant's fifth request, which we have quoted, if that finding stood alone.

But it is evident both from what preceeds and what follows it that the trial judge must have passed upon this fifth request affirmatively by inadvertence; for he declined to find as requested by the appellants in their sixth proposition which immediately follows it and is in these words: " That such failure was not contemplated on or before the

21st of November, when said assignors drew from the firm $433.21." And by the eighth finding he had already expressly decided that the money had been drawn in the contemplation of making said general assignment, and with intent to prevent the money from coming to the assignee thereunder, and in order to cheat and defraud the creditors of the firm.

As to the preference to Joseph Talbot, as assignee of Thomas Gilbert, there is no doubt that it included too much interest. Mr. Talbot was unable to offer any explanation of this circumstance and while the suggestion of counsel that it was accidental may be the true explanation there is no testimony to that effect. Alone and of itself the error in this preference would not prove the existence of a fraudulent intent on the part of the assignors, but it was proper to be considered in connection with the other facts of the case in its bearing upon the question of motive.

It is not perceived that any inference of fraud should be drawn from the fact that the assignor had sent large quantities of goods to be sold at auction, where the prices realized were for the most part only sufficient to cover the advances which they had obtained thereon. But the proof in respect to the other matters that have been considered affords a sufficient basis for the judgment, independent of any question concerning these sales.

Our attention has been called to but one exception relating to evidence. William Clarendon, the father of the defendant Elizabeth J. Clarendon, who had been a clerk for the firm which made the assignment, and subsequently entered into the employment of another firm, known as M. E. Clarendon & Co. was asked whether he could tell when he first talked with the latter firm about being employed in their business. An objection to this question, as being immaterial and irrelevant, was overruled, and an exception was taken. As to this exception, it is enough to say that

the question elicited nothing by way of answer that can possibly have harmed the defendants.

The judgment should be affirmed, with costs.

VAN BRUNT, Ch. J., and DANIELS, J., concur.

*William H. Arnoux*, for appellants.

*A. Blumenstiel*, for respondant.

PER CURIAM.—In the case of The Campbell Printing Press Co. *v.* Damon (48 Hun, 509; 16 N. Y. State Rep. 133), Van Brunt, P. J., said, "It has been the settled law of this state, since the decision of the case of Thompson *v.* Van Vechten (27 N. Y. 568), that a mortgage not filed of a chattle not delivered is void as to a creditor at large whose claim accrues while the default in filing continues, though such creditor is not in a position to raise the question until he has obtained judgment against the property." This proposition disposes of all the points presented for our consideration in behalf of the appellants in the case at bar, and requires an affirmance of the judgment.

Judgment affirmed, with costs.